YVONNE T. RODRIGUEZ, Justice *765 This is an appeal from an order granting summary judgment in favor of Government Employees Insurance Company (Geico), dismissing two claims that Daniel Ramirez brought against Geico under the Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code, for alleged delays that occurred in paying his claims. Ramirez alleges that the trial court abused its discretion by granting Geico's motion for summary judgment. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL SUMMARY
The undisputed facts reveal that Ramirez had an automobile liability insurance policy with Geico, providing him with coverage for personal injury protection, collision, uninsured motorist bodily injury and property damage. On or about October 3, 2012, Ramirez was struck from behind by another vehicle, causing damage to his vehicle and personal injuries which he claims necessitated medical treatment. Ramirez immediately notified Geico of the accident by phone. By letter dated October 5, 2012, Geico advised that it had received notice of the accident. The letter instructed Ramirez to complete an "application for benefits" form, which was needed to process the claim, and to have his doctor fill out an attending physician's report and return it to Geico promptly. By a separate letter dated October 4, 2012, Geico notified Ramirez that he had the right under Texas law to choose where to have his vehicle repaired.
Ramirez began medical treatment with a chiropractor in October 2012, and according to his pleadings, he visited his chiropractor several times in October, November, and December, with his last visit occurring on December 21, 2012. In his pleadings, Ramirez claimed that as of the end of November 2012, he had accumulated $3,868 in unpaid chiropractic bills. According to him, Geico issued two checks to his chiropractor on December 4, 2012, in the amounts of $335 and $1,288. He claims, however, that Geico "inexplicably" delayed paying the remainder of his medical bills, and did not make any additional payments to his chiropractor until August 26, 2013, after which Geico issued a series of checks to his chiropractor through September 3, 2013 in the following amounts: $100.59, $917.09, $913.56, $672.75, and $720.99.
On September 3, 2014, Ramirez filed a pro se lawsuit against Geico, alleging that Geico's delay in paying the remainder of his bills caused him to prematurely stop treatment with his chiropractor due to his fear that Geico did not intend to pay his outstanding bills, and that he might be held personally liable for the remaining bills. In his petition, Ramirez claimed that Geico's actions in delaying payment violated the Texas Deceptive Trade Practices Act (DTPA), and certain provisions of the Texas Insurance Code and the Texas Administrative Code. He listed seventeen violations alleging that Geico had generally engaged in "false, misleading, or deceptive acts or practices," had made various misrepresentations to him with regard to his insurance policy and his coverage, had failed to timely affirm or deny coverage for his claim, had refused to pay his claim without a reasonable investigation, had failed to promptly provide an explanation for denying his claim, and had failed to effectuate a prompt, fair and equitable settlement of his claim. Ramirez sought damages in the form of civil penalties under the DTPA and the Insurance Code, as well as damages to cover the medical treatment he claimed he still needed.
*766 Geico's Motion for Summary Judgment
On February 2, 2015, Geico filed a no-evidence motion for summary judgment, asserting that it had paid all of Ramirez's claims and that his lawsuit appeared to be based solely on his extracontractual causes of action, i.e., violations of the DTPA and the Insurance Code for Geico's alleged delay in making those payments. Geico listed all 17 allegations of Code violations and expressly argued that Ramirez had no evidence to support any of them.
On March 30, 2015, Ramirez filed a written response, listing again the Code provisions he believed Geico had violated, and claimed that there was a "close nexus" between the alleged Code violations and the harm that he allegedly suffered due to Geico's delay in timely paying his medical bills. He attached his insurance policy; the two letters Geico had sent him on October 4 and 5, 2012, accepting coverage for his accident; and his affidavit. The affidavit alleged that Geico told him that his claim had been "accepted," but it thereafter delayed paying his medical bills, causing him to stop his medical treatment, without proper notice that they were disputing his medical bills. Ramirez further claimed that this left him in a "mental state of fear that [he might] get stuck with medical bills," thereby causing him to "abruptly cease[ ] the on-going chiropractic care." And because his chiropractic care was not completed, he still experienced back pain. For the first time, Ramirez also alleged that he was entitled to damages for mental anguish for Geico's purported "delay payment scheme." When he discovered Geico's "scheme," it caused him to feel like a "victim," caused him to feel "fear and panic upon hearing or seeing the word GEICO," and caused him to awake at night in "constant worry as to why GEICO used a delay payment scheme" to force him to stop his medical treatment.
The Hearings on Motion for Summary Judgment
At a hearing held April 6, 2015, the trial court indicated that it was having difficulty understanding the nature of Ramirez's lawsuit, and that it believed further discovery was needed to help flush out the facts of his case. The trial court then determined that Ramirez had not yet responded to Geico's deposition notice. The parties agreed on the record that Ramirez would make himself available on May 6, 2015. After warning Ramirez about the dangers of self-representation, the trial court reset the hearing to allow time for his deposition, and any other needed discovery.
The hearing resumed on September 24, 2015. Geico's attorney represented that he had taken the plaintiff's deposition. Counsel then informed the court that Ramirez's claim for damages to the car had been paid, that his medical bills had also been paid under the personal injury protection (PIP) benefits portion of his policy, and that the lawsuit was not based on a breach of the insurance policy. Instead, counsel expressed his opinion that the lawsuit was based solely on extracontractual claims and then argued that there was no evidence to support either of those causes of action. In response, Ramirez acknowledged that his lawsuit was based on the delays in paying the claims. He did not come forward with any additional evidence. The trial court granted summary judgment, dismissing his petition in its entirety.
The Contest to Indigence Affidavit
At the start of the trial court proceedings in September 2014, Ramirez filed an affidavit of inability to pay or give security for costs. Geico did not contest the affidavit. On October 20, 2015, the same day that that he filed his notice of appeal, Ramirez *767 filed a motion of inability to pay or give security for costs, together with an affidavit providing information on his monthly income and expenses. On October 26, 2015, Geico filed a contest, alleging that the affidavit was "defective," as it did not meet the requirements of Rule 20.1 of the Texas Rules of Appellate Procedure, as that Rule existed at the time. Ramirez responded that Geico's contest was not timely filed, but did not seek leave to amend his affidavit to meet the requirements of the Rule.
On November 2, 2015, the trial court sustained Geico's contest, finding that the affidavit was defective, and that Ramirez had not proven the allegations contained therein. Again Ramirez failed to request the opportunity to amend his affidavit, nor did he seek our review of the court's ruling. Ramirez paid the fees owed, and the appeal proceeded.
In his first two issues for review, Ramirez complains that the trial court improperly granted summary judgment relief, and that the court should not have dismissed his extracontractual causes of action. In his third issue, he claims that the trial court improperly granted Geico's contest to his affidavit of inability to pay costs on appeal.
SUMMARY JUDGMENT
Applicable Law and Standard of Review
Rule 166a(i), which governs no-evidence motions for summary judgment, provides as follows:
After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.
TEX.R.CIV.P. 166a(i). In a no-evidence motion for summary judgment, the defendant alleges that adequate time for discovery has passed and that the plaintiff still has no evidence to support one or more essential elements of a claim for which the plaintiff would bear the burden of proof at trial.[1] See Stierwalt v. FFE Transp. Services, Inc., 499 S.W.3d 181, 194 (Tex. App.-El Paso 2016, no pet.) (citing KCM Fin. LLC v. Bradshaw , 457 S.W.3d 70, 79 (Tex. 2015) ). The motion must specifically state the elements as to which the movant contends there is no evidence. TEX.R.CIV.P. 166a(i) ; Timpte Industries, Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009) ; Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc. , 417 S.W.3d 531, 540 (Tex. App.-El Paso 2013, no pet.).
Once a motion is filed, the burden shifts to the non-movant to present evidence raising an issue of material fact as to the elements challenged. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). Although the non-movant is not required to marshal all of its proof, it must present countervailing evidence that raises a genuine fact issue of fact on each of the challenged elements. Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX.R.CIV.P. 166a ). To raise a genuine *768 issue of fact and avoid summary judgment, the non-movant must come forward with more than a scintilla of evidence on that issue. See Ciguero v. Lara , 455 S.W.3d 744, 747 (Tex. App.-El Paso 2015, no pet.) (a no-evidence summary judgment is properly granted if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. Id. ; see also Barraza v. Eureka Co., a Div. of White Consolidation Indus., Inc., 25 S.W.3d 225, 231 (Tex. App.-El Paso 2000, pet. denied) (citing TEX.R.CIV.P. 166a(i) ; Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) ). On the other hand, less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion ..." of a fact, and the legal effect is that there is no evidence. Barraza, 25 S.W.3d at 231 (citing Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983) ); see also King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 755 (Tex. 2003) (while anything more than a scintilla of evidence is legally sufficient to survive a no-evidence summary judgment motion, "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence") (citing Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927 (Tex. 1993) ; Kindred, 650 S.W.2d at 63 ). If the plaintiff fails to raise a genuine issue on each challenged element, the trial court must grant the motion. See Stierwalt, 499 S.W.3d at 194 (citing Hall v. RDSL Enters., LLC , 426 S.W.3d 294, 300 (Tex. App.-Fort Worth 2014, pet. denied) ); see also Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).
We review de novo an order granting summary judgment, using the same legal sufficiency standard we apply to review a directed verdict. King Ranch, Inc. , 118 S.W.3d at 750-51 ; see also Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010) ; Stierwalt, 499 S.W.3d at 194 (citing Timpte Indust., Inc., 286 S.W.3d at 310 ). We "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." Mack Trucks, 206 S.W.3d at 582 ; see also City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005) ; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 208 (Tex. 2002).
Preliminary Matters
Motion for Summary Judgment was not Based on an Affirmative Defense
As a preliminary matter, we note that an overarching theme in Ramirez's brief is his argument that Geico was asserting the affirmative defense of "payment in full" as the basis for summary judgment. Stated differently, Ramirez believes that Geico was arguing that the trial court should grant summary judgment in its favor simply because it had paid all of his claims. He points out that the true nature of his lawsuit centered on his extracontractual causes of action under the DTPA and the Texas Insurance Code, which the trial court misconstrued when it granted summary judgment. He also argues that the trial court should not have considered Geico's "payment in full" argument in support of its motion for summary judgment, pointing out that "payment in full" is an "affirmative defense" that Geico was required *769 to, but did not, plead. He continues that even if Geico had pled "payment" as an affirmative defense in its responsive pleading, it would not have been entitled to bring a no-evidence motion for summary judgment based on that alleged affirmative defense, and that Geico would have instead been required to file a traditional summary judgment, coming forward with its own evidence to support that motion.
We recognize that the extracontractual causes of action were separate and distinct from any claim for breach of the insurance policy. See Liberty Nat'l Fire Ins. Co. v. Akin , 927 S.W.2d 627, 629 (Tex. 1996). In effect, a claim for breach of an insurance policy is a "contract cause of action," while a statutory bad-faith claim is a cause of action that sounds in tort. Twin City Fire Ins. Co., 904 S.W.2d at 666 ; see also Viles v. Sec. Nat'l Ins. Co. , 788 S.W.2d 566, 567 (Tex. 1990).
"Payment in full" is an affirmative defense that Geico was required to plead. See, e.g., Rockwall Commons Associates, Ltd. v. MRC Mortg. Grantor Tr. I, 331 S.W.3d 500, 506 (Tex. App.-El Paso 2010, no pet.) (citing Southwestern Fire & Cas. Co. v. Larue , 367 S.W.2d 162, 163 (Tex. 1963) ); see also TEX.R.CIV.P. 95 ("When a defendant shall desire to prove payment, he shall file with his plea an account stating distinctly the nature of such payment, and the several items thereof[.]"); but see McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex. 1993) (citing Roark v. Stallworth Oil and Gas, Inc., 813 S.W.2d 492, 494-95 (Tex. 1991) ("[A]n unpleaded affirmative defense may also serve as the basis for a summary judgment when it is raised in the summary judgment motion....")). Because "payment in full" is an affirmative defense for which a defendant bears the burden of proof, Geico could not raise such a defense in a no-evidence motion for summary judgment. See, e.g. , In re Estate of Coleman, 360 S.W.3d 606, 610 (Tex. App.-El Paso 2011, no pet.) (it is error for a trial court to grant a no-evidence summary judgment on a claim for which the moving party bears the burden of proof) (citing Battin v. Samaniego, 23 S.W.3d 183, 185-86 (Tex. App.-El Paso 2000, pet. denied) ); see also Battista v. City of Alpine , 345 S.W.3d 769, 775 (Tex. App.-El Paso 2011, no pet.) (because the defendants' no-evidence motion was an improper attack on claims for which they held the burden of proof, the trial court properly denied the motion); Pollard v. Hanschen , 315 S.W.3d 636, 639 (Tex. App.-Dallas 2010, no pet.) ("A party may not file a no-evidence summary judgment motion on an affirmative defense he has the burden to prove at trial."); TEX.R.CIV.P. 166a(i) (a party may only move for a no-evidence summary judgment under Rule 166a(i), based upon a claim that there is no evidence to support an element on which the non-moving party has the burden of proof).
If Geico had wished to rely on payment as an affirmative defense, it would have been required to file a traditional motion for summary judgment, and would have been required to come forward with sufficient summary judgment evidence to establish all elements of that defense. See, e.g., Pollard , 315 S.W.3d at 638-39 (explaining the distinction between a no-evidence motion for summary judgment and a traditional motion for summary judgment that requires the moving party to come forward with evidence to support the elements of its claim or defense); see also Carrera v. Yepez , 6 S.W.3d 654, 660-61 (Tex. App.-El Paso 1999, pet. dism'd w.o.j) (defendant moving for summary judgment based on an affirmative defense must come forward with summary judgment evidence to conclusively establish each element of the defense as a matter of *770 law such that there is no genuine issue of material fact); see generally Frost Nat. Bank v. Fernandez , 315 S.W.3d 494, 508 (Tex. 2010) (a defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment).
However, the flaw in Ramirez's argument is that Geico did not base its motion for summary judgment on a "payment in full" defense," and/or on any other affirmative defense for which it had the burden of proof. It only referred to the fact that it had paid Ramirez's insurance claims, as a means of explaining to the trial court that the lawsuit was not based on a breach of the policy, and was instead centered on extracontractual causes of action. The motion was based solely on its challenge to Ramirez to come forward with evidence to support his allegations that Geico had violated Code provisions in the manner alleged in his complaint. We conclude that Geico properly brought a no-evidence motion on this basis.
Ramirez Had the Burden of Proof to Establish his Causes of Action
In a similar vein, Ramirez appears to believe that Geico shouldered the burden of establishing that it did not violate the provisions of the DTPA and the Texas Insurance Code. He then argues that Geico could not bring a no-evidence motion for summary judgment on an issue for which it had the burden of proof, and that the trial court therefore erred in granting the motion.
Ramirez is correct that a party cannot move for a no-evidence summary judgment on an issue for which the moving party had the burden of proof. He is incorrect that Geico had the burden of disproving his causes of action alleged in his petition. If the matter had gone to trial, Ramirez would have shouldered the burden of proof in establishing that Geico violated the Code provisions enumerated in his petition. See, e.g., United Nat. Ins. Co. v. AMJ Investments, LLC , 447 S.W.3d 1, 13 (Tex. App.-Houston [14th Dist.] 2014, pet. dism'd) (discussing insured's burden of establishing remedies available under the Texas Insurance Code); Sparks v. Booth , 232 S.W.3d 853, 864-65 (Tex. App.-Dallas 2007, no pet.) (discussing plaintiff's burden in a DTPA lawsuit); see generally Republic Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d 423, 427 (Tex. 2004) (discussing insured's burden of establishing the right to receive a "delay penalty" under former provision in the Texas Insurance Code). We next determine whether Ramirez met that burden for each of those two causes.
THE ALLEGED DTPA VIOLATIONS
In his first issue, Ramirez complains that the trial court erred in dismissing the DTPA cause of action. The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce...." TEX.BUS. & COM.CODE ANN. § 17.46(a) (West Supp. 2017). To recover under the DTPA, the plaintiff must show that: "(1) he is a consumer; (2) the defendant engaged in a false, misleading, or deceptive act; and (3) the act constituted a producing cause of the plaintiff's damages." Sparks , 232 S.W.3d at 864-65 (citing TEX.BUS. & COM.CODE ANN. § 17.50(a) ; Doe v. Boys Clubs of Greater Dallas, Inc. , 907 S.W.2d 472, 478 (Tex. 1995) ); see also Brown v. Bank of Galveston, Nat. Ass'n, 963 S.W.2d 511, 513 (Tex. 1998). The DTPA provides a "laundry list of specifically prohibited acts." See Helena Chem. Co. v. Wilkins , 47 S.W.3d 486, 501 (Tex. 2001). In particular, section 17.46(b) currently lists 33 non-inclusive examples of the types of acts that may constitute actionable *771 violations of the Act. TEX.BUS. & COM.CODE ANN. § 17.46(b) (West Supp. 2017).
Geico's Motion Expressly Stated the DTPA Elements it was Challenging
Ramirez contends that Geico's motion for summary judgment was legally insufficient, as it did not expressly identify the elements of his DTPA cause of action that Geico was challenging. He is correct that a no-evidence motion for summary judgment must specifically state the elements as to which the defendant believes there is no evidence. See Diez v. Alaska Structures, Inc. , 455 S.W.3d 737, 740 (Tex. App.-El Paso 2015, no pet.) (citing TEX.R.CIV.P. 166a(i) ; Timpte Industries, Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009) ). The underlying purpose of this requirement "is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment." Timpte Indus., Inc., 286 S.W.3d at 311 (citing Westchester Fire Ins. Co. v. Alvarez, 576 S.W.2d 771, 772 (Tex. 1978) ). A no-evidence summary judgment motion "must be specific in challenging the evidentiary support for an element of a claim or defense," and "conclusory motions or general no-evidence challenges to an opponent's case" will be deemed insufficient to provide the requisite notice to the non-movant. Timpte Indus., Inc., 286 S.W.3d at 310. We agree that Geico failed to meet this requirement.
In his petition, Ramirez claimed that he was a consumer under the DTPA, and that Geico had engaged in the following violations:
a. engaging in false, misleading, or deceptive acts or practices in the conduct of trade and commerce, in violation of TEX.BUS. & COMM. [sic] CODE 17.46(a);
b. representing that its goods or services have characteristics, uses or benefits which they do not have in violation of TEX.BUS. & COMM. [sic] CODE 17.46(b) (5); and
c. representing that an agreement confers or involves rights, remedies, or obligations which it does not have or which are prohibited by law, in violation of TEX.BUS. & COMM. [sic] CODE 17.46(b) (12).
In its motion for summary judgment, Geico did not challenge Ramirez's contention that he was a consumer under the DTPA, and did not address the elements of causation or damages. Instead, its motion was based solely on the contention that Ramirez did not have sufficient evidence to support his claim that Geico had engaged in any action that could be considered a false, misleading, or deceptive act under the DTPA. The motion expressly listed the three DTPA violations enumerated in plaintiff's petition, and challenged Ramirez to come forward with evidence that Geico engaged in any action that could be considered a violation. We conclude that Geico's motion provided fair notice of the element it was challenging. See Timpte Indus., Inc. , 286 S.W.3d at 311 (where plaintiff alleged in his petition that he was injured by a design defect in defendant's product, defendant's no-evidence motion for summary judgment provided plaintiff with adequate notice that it was challenging him to come forward with evidence to establish that the design defect actually existed and that he was injured by that defect); see also Sledge v. Mullin, 927 S.W.2d 89, 94-95 (Tex. App.-Fort Worth 1996, no writ) (defendant's motion for no-evidence summary judgment properly defined the issues by addressing all causes of action asserted by the plaintiffs, and gave the plaintiffs fair notice of the grounds on which he sought summary judgment).
*772 The Alleged Misrepresentations Under the DTPA
Two of the DTPA claims center on the allegation that Geico made misrepresentations regarding (1) the goods or services Ramirez received from Geico and (2) the benefits to which he was entitled under his policy. An affirmative misrepresentation of insurance coverage may give rise to claims under the DTPA. See Wyly v. Integrity Ins. Sols. , 502 S.W.3d 901, 907-908 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (citing Brown & Brown of Texas, Inc. v. Omni Metals, Inc., 317 S.W.3d 361, 383 (Tex. App.-Houston [1st Dist.] 2010, pet. denied) ). But to bring an actionable claim for an alleged misrepresentation by an insurer, the plaintiff must identify the specific misrepresentation the insurer made. See Howard v. Burlington Ins. Co., 347 S.W.3d 783, 798 (Tex. App.-Dallas 2011, no pet.) (citing Sledge v. Mullin, 927 S.W.2d 89, 94 (Tex. App.-Fort Worth 1996, no writ) ); see also Moore v. Whitney-Vaky , 966 S.W.2d 690, 692 (Tex. App.-San Antonio 1998, no pet.) ("[i]n the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA"). A defendant is thus entitled to summary judgment when the plaintiff fails to come forward with any evidence to support his claim that the defendant actually made a misrepresentation in violation of the DTPA. See Lee v. Catlin Specialty Ins. Co., 766 F.Supp.2d 812, 825-28 (S.D. Tex. 2011) (insurance company was entitled to summary judgment dismissing plaintiff's DTPA claim, where plaintiff pointed to no evidence in the record that supported his misrepresentation or failure-to-disclose claims); see also Oldaker v. Travelers Ins. Co. , 497 S.W.2d 402, 404-405 (Tex.Civ.App.-El Paso 1973, no writ) (affirming directed verdict in favor of insurer on plaintiff's claim for reformation of insurance policy, where there was no evidence that insurance company engaged in any fraudulent conduct that would justify reformation).
Ramirez did not point to any specific misrepresentations Geico made, did not indicate when and/or where the alleged misrepresentations were made, and did not indicate who made them. More importantly, he presented no evidence that any misrepresentation occurred. In his affidavit, Ramirez failed to assert that Geico made a misrepresentation to him, and instead only addressed his allegation that Geico wrongfully delayed paying his claims. We conclude that he failed to meet his burden of coming forward with even a scintilla of evidence to support his claim that Geico made an actionable misrepresentation to him under the DTPA.
The Alleged Delay Payment Scheme under the DTPA
This leaves us with Ramirez's third and last DTPA claim-that Geico's actions in delaying payment of his medical bills constituted a false, misleading or deceptive act in violation of the DTPA.[2] He believes that Geico purposely engaged in a delay payment scheme to force him to stop medical treatment.
*773 We need not decide whether such conduct could be considered a violation of the DTPA, as Ramirez has failed to come forward with any evidence to suggest that Geico did in fact purposely delay paying his medical bills. The only evidence that he presented on this point comes from his affidavit, in which he states in conclusory terms, that Geico delayed medical payments to his chiropractor. He did not present any evidence of when his medical bills were submitted for payment, and/or any evidence of communications that he or his chiropractor had with Geico with regard to paying those bills. See generally Fisher v. Blue Cross & Blue Shield of Texas, Inc., 3:10-CV-2652-L, 2015 WL 5603711, at *13-14 (N.D. Tex. Sept. 23, 2015) (court dismissed plaintiff medical providers' claims against insurance company where the plaintiffs conceded that they had no evidence that they actually billed the insurance company for any claims); compare Aranda v. Insurance Co. of N. Am., 748 S.W.2d 210, 213 (Tex. 1988) (evidence supported jury's finding that insurer acting in bad faith in delaying payments where insured presented evidence of delays that occurred after medical bills were submitted to the insurer for payment); see generally Quality Infusion Care, Inc. v. Health Care Serv. Corp., 224 S.W.3d 369, 383-84 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (discussing procedures by which medical providers must submit bills to insurance company for payment). Instead, his statement amounted to an unsubstantiated and conclusory statement that there had been a delay without any evidence to support it.
"Conclusory testimony or affidavits are not competent summary judgment evidence and are insufficient to create a question of fact to defeat summary judgment." See Gunville v. Gonzales , 508 S.W.3d 547, 560 (Tex. App.-El Paso 2016, no pet.) ; see also KBMT Operating Co., LLC v. Toledo, 492 S.W.3d 710, 715-16 (Tex. 2016) (citing In re Lipsky , 460 S.W.3d 579, 592 (Tex. 2015) ). A statement is conclusory if it does not provide the underlying facts to support the conclusion. See Montoya v. Nichirin-Flex, U.S.A., Inc., 417 S.W.3d 507, 513 (Tex. App.-El Paso 2013, no pet.) (citing Brown v. Brown, 145 S.W.3d 745, 751 (Tex. App.-Dallas 2004, pet. denied) ; Dolcefino v. Randolph, 19 S.W.3d 906, 930 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) ). In addition, "[s]tatements of subjective belief are no more than conclusions and are not competent summary judgment evidence." See Gunville, 508 S.W.3d at 560-61 (citing Krishnan v. Law Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 299 (Tex. App.-Corpus Christi 2002, pet. denied), citing Tex. Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994) ). Instead, to constitute competent summary judgment evidence, an affiant must establish some facts for how he obtained the personal knowledge to support his conclusions. Id. at 560-61 (citing TEX.R.CIV.P. 166a(f) ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 937-38 (Tex. 1998) (witness's conclusion for how long substance was on floor required predicate for opinion). Where there is no factual context for conclusions, the statements do not constitute more than a scintilla of evidence. MJS & Associates, L.L.C. v. Master, 501 S.W.3d 751, 759 (Tex. App.-Tyler 2016, pet. denied) (citing LMB, Ltd. v. Moreno , 201 S.W.3d 686, 688-89 (Tex. 2006) (per curiam)). We overrule Issue One.
*774 THE ALLEGED TEXAS INSURANCE CODE VIOLATIONS
In his second issue, Ramirez argues that the trial court erred in dismissing his cause of action for Geico's alleged violations of the Texas Insurance Code. In his petition, he listed several Insurance Code provisions he believed Geico had violated, and in particular alleged that Geico had made various misrepresentations to him; had generally engaged in unfair or deceptive acts or practices; had failed to effectuate a prompt, fair, and equitable settlement of his claim; had failed to promptly provide him with a reasonable explanation of the basis in the policy for its denial of his claim; had failed to affirm or deny coverage of his claim within a reasonable time; and had refused to pay his claims without conducting a reasonable investigation. In turn, Geico listed those alleged violations in its motion for summary judgment, and challenged Ramirez to come forward with summary judgment evidence to support his allegations.
Alleged Misrepresentations Under the Insurance Code
An affirmative misrepresentation of insurance coverage may give rise to claims under the Texas Insurance Code. See Wyly , 502 S.W.3d at 907-908 (citing Brown & Brown of Texas, Inc. v. Omni Metals, Inc., 317 S.W.3d 361, 383 (Tex. App.-Houston [1st Dist.] 2010, pet. denied) ). The Texas Insurance Code lists several types of misrepresentations or omissions that are actionable.[3] Mirroring those Code provisions, Ramirez alleged that Geico violated those provisions by making the following misrepresentations:
b. making, issuing, or circulating, or causing to be made, issued or circulated, a statement representing the benefits or advantages promised by the policy in violation of TEX. INS. CODE 541.051(1)(B) ;
c. misrepresenting to a claimant a material fact or policy or policy provision relating to coverage at issue in violation of TEX. INS. CODE 541.060(1) ;
...
h. making an untrue statement of material fact in violation of TEX. INS. CODE 541.061(1) ;
i. failing to state a material fact necessary to make the other statements made not misleading, considering the circumstances under which the statements *775 were made in violation of TEX. INS. CODE 541.061(2) ;
j. making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact, in violation of TEX. INS. CODE 541.061(3) ; and
k. making a material misstatement of law in violation of TEX. INS. CODE 541.061 (4).
Similar to the requirements of a DTPA lawsuit, a plaintiff claiming that an insurer made a misrepresentation or omission in violation of the Texas Insurance Code is required to point to an express misrepresentation or an omission relating to an insurance policy that the insurer allegedly made. See, e.g., Howard v. Burlington Ins. Co. , 347 S.W.3d 783, 798 (Tex. App.-Dallas 2011, no pet.) (in the absence of a specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA or the Insurance Code) (citing Sledge v. Mullin, 927 S.W.2d 89, 94 (Tex. App.-Fort Worth 1996, no writ) ); see also Moore, 966 S.W.2d at 692 (absent some specific misrepresentation, an insured's mistaken belief about the scope of his coverage does not state a valid claim for relief).
Ramirez failed to come forward with any evidence that Geico and/or any of its agents made a specific misrepresentation to him regarding his policy, and/or regarding any material issue of fact or law pertaining to his policy. We conclude that Ramirez did not meet his burden of coming forward with more than a scintilla of evidence to support his claim that Geico made an actionable misrepresentation or omission under the Texas Insurance Code.
The Alleged Failure to Effectuate a Prompt, Fair, and Equitable Settlement
The Texas Insurance Code also provides that "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary ... (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear...." TEX.INS.CODE ANN. § 541.060 (a)(2)(A) ; see also USAA Texas Lloyds Co. v. Menchaca , --- S.W.3d ----, ----, 2017 WL 1311752, at *3 (Tex. Apr. 7, 2017) (similar to the common-law duty, the Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits) (citing e.g. , TEX.INS.CODE ANN. § 541.060(a) (prohibiting insurers from engaging in a variety of "unfair settlement practices")). Ramirez's sole claim that Geico engaged in an unfair settlement practice is once again centered on his claim that Geico delayed paying his medical bills.
Assuming without deciding that a delay of payment could be considered actionable under this provision in the Insurance Code, we once again note that Ramirez failed to present evidence of when his medical bills were presented to Geico for payment, or in other words, when Geico's liability to pay those bills became "reasonably clear." Similarly, as set forth above, there is no evidence of when Ramirez and/or his medical provider attempted to "settle" their claim with Geico. Consequently, he failed in his burden of presenting sufficient summary judgment evidence to support his claim that Geico engaged in *776 any unfair settlement practices due to its alleged delay in paying the medical bills.
The Alleged Denial of Ramirez's Claim without a Reasonable Investigation and the Alleged Failure to Promptly Explain the Reasons for the Denial
The Insurance Code provides that it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: "(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim ... [and] (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim[.]" TEX.INS.CODE ANN. § 541.060.
In his petition, Ramirez alleged that Geico violated both provisions. But there is no evidence that Geico actually denied his claim and/or refused to pay his medical bills. Ramirez appears to agree that Geico did in fact pay all of his medical bills, and that his only complaint centered on Geico's alleged delay. Moreover, Ramirez presented no evidence to demonstrate the type of investigation that Geico conducted, or that its investigation was not reasonable. We conclude that he presented no evidence to support a violation of either Code provisions.
The Alleged Failure to Affirm or Deny Coverage in a Reasonable Time
The Insurance Code also provides that it is an unfair or deceptive act to engage in the following: "failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder...." TEX.INS.CODE ANN. § 541.060. Although Ramirez claimed that Geico violated this provision, he admitted in his response to Geico's motion for summary judgment that Geico notified him within two days of his accident that he had coverage and provided him with guidance on how to proceed with his claim. In addition, in the affidavit he attached to his response, Ramirez admitted that Geico told him that his claim had been "accepted," with no indication that any delay occurred. There is no evidence that Geico violated this provision. We therefore conclude that Ramirez failed to present more than a scintilla of evidence to support his claim that Geico violated any of the provisions of the Texas Insurance Code as alleged in his petition. Because the trial court properly dismissed his Texas Insurance Code cause of action on this basis, we overrule Issue Two.
THE INDIGENCE CONTEST
In his third and final issue, Ramirez contends that the trial court erred by granting Geico's contest to his affidavit of inability to pay costs. In particular, he contends that the trial court should not have granted the contest because it was not timely filed, citing to a prior version of Rule 20.1 of the Texas Rules of Appellant Procedure, which he claims required a party to file a contest to an affidavit within three days after a notice of appeal is filed.
Rule 20.1, as it existed prior to the 2016 amendments, required a contest in a civil case to be filed in the trial court within ten days after the date when the affidavit was filed. See Morris v. Aguilar , 369 S.W.3d 168, 170 n.1 (Tex. 2012) (citing to former TEX.R.APP.P. 20.1(e) (recognizing that the former rule allowed any party to "challenge an affidavit ... by filing ... a contest ... within 10 days after the date when the affidavit was filed if the affidavit was filed in the trial court"); see also In re Heredia , 501 S.W.3d 70, 71 (Tex. 2016) (an affidavit of indigence filed in a trial court is *777 operative unless challenged within ten days of its filing); In re Velez-Uresti , 361 S.W.3d 200, 206 (Tex. App.-El Paso 2012, pet. denied) (recognizing that former Rule 20.1(e) required a contest to be filed within ten days after the date an affidavit of indigence was filed in the trial court).
Ramirez appears to have mistakenly cited to the former rule pertaining to suits filed by a governmental entity in which termination of the parent-child relationship or managing conservatorship is requested, which required the contest to be filed within three days after a notice of appeal was filed. As his case is not a suit of that nature, the three-day rule is inapplicable, and the ten-day rule applied. Geico filed its contest in compliance with the ten-day rule. Ramirez filed his motion of inability to pay or give security for costs on appeal, together with an affidavit of inability to pay or give security for costs, on October 20, 2015. Geico filed its contest six days later, well within the ten-day period of time.
Ramirez also complains that the trial court scheduled a hearing on the contest "without giving him advance notice," and did so on a day when he "had other plans and travel." Rule 20.1, as it existed at the time, required that upon the filing of a contest to an affidavit of indigence, the trial court was required to set a hearing and notify the parties and the appropriate court reporter of the setting. Montalvo v. JP Morgan Chase Bank, N.A., 375 S.W.3d 553, 554 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citing former TEX.R.APP.P. 20.1(i)(1) ). The Rule required the trial court to hold a hearing, or alternatively sign an order extending the time to conduct the hearing, within ten days after the contest was filed. Id. (citing former TEX.R.APP.P. 20.1(i)(2)(A) ). And finally, it provided that in no event could the hearing be extended for more than twenty days from the date the order is signed. Id. (citing TEX.R.APP.P. 20.1(i)(3) ). Here, the contest was filed on October 26, 2015, and the trial court's order indicated that after providing notice to all parties, it heard the matter on November 2, 2015, determined that Ramirez's affidavit was defective, and sustained the contest. There is nothing in the record to indicate that Ramirez requested a continuance, objected to the hearing, or objected to the trial court's ultimate determination to sustain the contest. Ramirez has waived his right to raise these issues on appeal.
Moreover, the trial court correctly ruled that the affidavit was defective under Rule 20.1(b), as it existed at the time. That rule set forth the following twelve requirements that had to be included in an affidavit of inability to pay costs: (1) the nature and amount of the party's current employment income, government-entitlement income, and other income; (2) the income of the party's spouse and whether that income is available to the party; (3) real and personal property the party owns; (4) cash the party holds and amounts on deposit that the party may withdraw; (5) the party's other assets; (6) the number and relationship to the party of any dependents; (7) the nature and amount of the party's debts; (8) the nature and amount of the party's monthly expenses; (9) the party's ability to obtain a loan for court costs; (10) whether an attorney is providing free legal services to the party without a contingent fee; (11) whether an attorney has agreed to pay or advance court costs; and (12) if applicable, the party's lack of the skill and access to equipment necessary to prepare the appendix, as required by Rule 38.5(d). In re C.H.C., 331 S.W.3d 426, 429 n.5 (Tex. 2011) (citing TEX.R.APP.P. 20.1(b) ); see also In re J.W., 52 S.W.3d 730, 731-32 (Tex. 2001) (per curiam) (listing requirements under the Rule). Ramirez's affidavit, which *778 simply listed his monthly income and expenses, was clearly defective as found by the trial court.
Ramirez now complains that he should have been given an opportunity to amend his affidavit to meet the requirements of the former Rule. If he had requested such an opportunity, it would have been incumbent upon the trial court to allow him to do so. See generally In re J.W. , 52 S.W.3d at 733 (court erred by failing to grant petitioners' motion to amend their affidavits to comply with the then-existing requirements of Rule 20.1 ). Instead, he allowed his appeal to go forward, paying all necessary costs. He has forfeited the right to raise this issue on appeal. We overrule Issue Three and affirm the judgment of the trial court below.
Hughes, J., not participating

Ramirez does not argue that he did not have adequate time for discovery for purposes of Rule 166a(i), and, as set forth above, the trial court reset the initial summary judgment hearing from April 2015 until September 2015, to give the parties almost five additional months to conduct discovery. Ramirez admittedly conducted no discovery during those five months.

The DTPA provides in general that "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code." Tex. Bus. & Com. Code Ann. § 17.46(a). It then provides a non-exclusive list of acts that could be considered unlawful, which includes various acts of misrepresentation, failing to disclose information, and false advertising. Tex. Bus. & Com. Code Ann. § 17.46(b).

Section 541.061 of the Code provides as follows: "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; (4) making a material misstatement of law; or (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code." Tex. Ins. Code Ann. § 541.061 (West 2009). Section 541.060 provides that: "(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue[.]" Tex. Ins. Code Ann. § 541.060 )a)(1) (West 2009). "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to: (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued...." Tex. Ins. Code Ann. § 541.051 (West 2009).