

# NUMBER 13-24-00293-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MO-CON SERVICES, INC.,                                            **Appellant,**

**v.**

CITY OF KENEDY,                                               **Appellee.**

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 1
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Silva**

Appellant Mo-Con Services, Inc. (Mo-Con) appeals the trial court's order granting a no-evidence motion for summary judgment in favor of appellee, the City of Kenedy (City). In two issues, which we renumber and reorganize, Mo-Con argues the trial court abused its discretion when (1) it failed to provide Mo-Con "sufficient time" to respond to the City's summary judgment motion, and (2) granted the City's summary judgment

motion. We affirm.

## I. BACKGROUND

On July 29, 2021, Mo-Con filed its original petition against the City, Hanson Engineering Services, LLC (Hanson), John Hernandez, Steve Synovitz, and Mott MacDonald, LLC (Mott) in Nueces County.[1,2] Mo-Con alleged that it had contracted with the City "to make [s]torm [s]ewer [i]mprovements," (the project) and that the City "flagrantly and intentionally refused to provide proper engineering after . . . defective engineering was discovered (and refused to approve proposed corrected engineering)" in relation to the project. Mo-Con further alleged that "[t]he project could not be completed as engineered due to a key omitted issue. The [acting e]ngineer recommended a [c]hange [o]rder but the City did not approve [it]. The engineer then submitted another design which the City approved but which was entirely unfeasible." Mo-Con pleaded several causes of action, including breach of contract, negligence, gross negligence, promissory estoppel, breach of implied contract, and "[t]hird[-p]arty[-b]eneficiary to [b]reached [c]ontract." It further alleged that "direct damages include lost profit and nonpayment for work performed," that "[t]he City owes over $50,000 in retainage for work done," and that "the breach has caused damages due to disrupted finances preventing full continuation of[ ]Mo-Con's business." Mo-Con sought actual damages, exemplary damages, court costs, pre and post judgment interest, attorney's fees, "engineer fees (expert witness

---

[1] We note that Mo-Con identified the City of Corpus Christi as a defendant in its original petition. However, as further discussed below, Mo-Con effectively removed the City of Corpus Christi as a defendant in its first amended petition. The City of Corpus Christi is not a party to this appeal.

[2] Hanson, Hernandez, Synovitz, and Mott are not parties to this appeal.

fees), and all other relief justly due."

On August 25, 2021, Hanson filed its original answer generally denying Mo-Con's claims and asserting a cross-claim against the City.

On November 22, 2021, the City filed its combined motion to transfer venue, special exceptions, and general denial to the allegations in Mo-Con's original petition and Hanson's cross-claim. On June 21, 2022, Mo-Con filed its "Venue Fact Denials and Venue Proof" with an attached affidavit by Ruben Moya, Mo-Con's president. Moya averred:

1. The Engineers all have their offices in Nueces Count[y] (at the time the facts at issue occurred - one later went to work for San Patricio County in Sinton, Texas).

2. I believe all the engineers reside in Nueces County.

3. All the engineers did substantially all their design work where their offices, staff, equipment, etc. is located. I rarely saw them in Karnes County and I only saw them inspect work and gather site facts there (not prepare drawings and plans e.g. design work).

4. The City did the most important part of its obligations under its contract with Mo-Con in Nueces County[,] specifically it sent checks to Mo-Con at its address in Nueces County.

5. The Engineers were my point of contact for all issues relating to my contract with the City. My communications with the Engineers (agents of the City) were mostly in Nueces County including in person visits at their offices and phone calls with both parties in Nueces County.

6. To my knowledge[], almost nothing occurred in Karnes Count[y] other than actual construction work but the gist of this lawsuit is bad engineering which occurred again in Nueces County. I am unaware of any engineering design work in Karnes County.

On May 10, 2022, Mo-Con filed its "First Amended Petition & Responses to Motions." In this filing, Mo-Con primarily responded to the City's motion to dismiss and

3

motion to transfer venue.[3]

On July 22, 2022, Mott filed its combined motion to dismiss, special exception, and original answer generally denying Mo-Con's claims and raising defenses. In the combined filing, Mott identified itself as a professional engineering firm registered with the Texas Board of Professional Engineers and Land Surveyors, and argued, among other things, that Mo-Con's claims against it should be dismissed due to its failure to timely file a certificate of merit from a licensed professional engineer "setting forth the negligence, if any, or other action[,] error, or omission, of [Mott] as mandated by Section 150.002 of the [Texas Civil Practice and Remedies Code]." *See* TEX. CIV. PRAC. & REM. CODE § 150.002 (requiring a plaintiff in any action for damages arising out of the provision of professional services by a licensed or registered professional to file an affidavit of a third-party licensed professional engineer practicing in the same area as defendant, setting forth specifically one negligent act, error, or omission). On the same day, Hernandez and Synovitz filed a joint combined motion to dismiss and original answer generally denying Mo-Con's claims and raising affirmative defenses. The joint motion also argued that Mo-Con's claims against Hernandez and Synovitz should be dismissed due to its failure to file a certificate of merit.

On July 25, 2022, Mo-Con filed its "Response to Motion to Dismiss" stating that it had "complied with the certificate of merit requirement." The response included an attached affidavit from Albert C. Alaniz III. In his affidavit, Alaniz identified himself as a

---

[3] Mo-Con also indicated in this filing that it was amending its original petition "to replace City of Corpus Christi with City of Kenedy in any place where the City of Corpus Christi is referenced as Defendant."

4

licensed professional engineer in Texas with over twenty-eight years of experience and stated that he was actively engaged in the practice of engineering and construction industries. Alaniz stated that his affidavit was "submitted pursuant to the . . . Texas Civil Practice and Remedies Code with respect to:"

a.  the engineering design and project management provided by [Hanson] of Corpus Christi, Texas, a professional engineering firm retained by the [City] for the [East Main Street Drainage] project . . . ;

b.  project design and project management by [Hernandez], a professional engineer and a [Hanson] employee during the initial phase of the project;

c.  project management by [Mott], a professional engineering firm retained by the [City] for [the ]construction phase services of the project after [Hanson] was released by the [City];

d.  construction project management by [Synovitz], a professional engineer initially employed by [Hanson] and assigned to the [project] after [Hernandez] resigned from [Hanson]. Subsequently, [Synovitz] resigned from [Hanson] and was employed by [Mott] for a latter portion of the project. The [City] retained [Mott] upon learning that [Synovitz] was now employed by [Mott].

Alaniz further stated he was retained by Mo-Con to review the following construction contract documents prepared by Hanson:

a.  Construction plans for [the project] prepared for the [City], dated July 18, 2018, signed, and sealed by [Hernandez].

b.  Contract Documents and Specifications:

[East Main Street Drainage]
[Kenedy, Texas]
[July 2018]
[Prepared for the City]

Based on his education, experience, and findings discovered during an interview with Moya and the construction contract documents, Alaniz opined that Hanson,

5

Hernandez, and Synovitz were responsible for numerous acts, errors, or omissions with respect to the project, including:

a.  Existing site conditions were not properly communicated on the construction plans to [Mo-Con] and to the prospective bidders.

b.  The topographic survey for the proposed project is incomplete. Not all subsurface utilities are indicated on the plans. A discovered gas line was in conflict with the proposed storm sewer improvements. A revised storm sewer design was required to avoid the conflict resulting in proposed storm sewers above the natural ground elevations.

c.  After construction commenced, sanitary sewers located within the project area were determined to require replacement. A stop work order was issued. The condition of existing sanitary sewers was not disclosed to [Mo-Con] and to prospective bidders.

d.  The storm water from the proposed project was directed to an existing open channel under the jurisdiction of the San Antonio River Authority. Permitting for the discharge of storm water was not secured from the San Antonio River Authority and not disclosed to [Mo-Con] during the bidding phase of the project and during most of the construction period.

e.  Since storm sewer grate inlets resulted in higher elevations than natural ground, they were converted to junction boxes. The proposed top elevations of the converted junction boxes were set at higher elevations than street level and natural ground, resulting in a proposed condition that would create a hazard to the general public.

f.  Storm sewers were revised and re-designed to higher elevations resulting in storm sewers with minimal cover or with higher elevations than natural ground.

g.  During the construction phase of the project, [Hernandez] requested recommendations and a design of storm water infrastructure (headwalls, flowlines, etc.) for review and approval. [Moya] informed [Hernandez] that he was not the Engineer and could not take responsibility for any design issues on the project. [Hernandez] and [Hanson] provided an alternate design for the storm water infrastructure in question. During the construction phase of the project, [Hernandez] requested and expected topographic field

6

services from [Mo-Con] to determine a course of action for the on-going work.

h.     When [Moya] informed [Hernandez] that the storm sewers had little cover and that the resulting revised storm water manholes would be higher than the adjacent street and natural ground, he was informed by [Synovitz] that the street was going to be raised to higher elevations. A revised pavement design with proposed higher street elevations was never provided by [Hanson], [Hernandez], and [Synovitz].

Alaniz concluded that the above acts, errors, or omissions indicated that Hanson, Hernandez, and Synovitz "failed to meet the applicable standard of care for engineering professionals." Based on his education, experience, and findings discovered during an interview with Moya and a review of a request for information (RFI), Alaniz further opined that Mott and Synovitz were responsible for the following acts, errors, or omissions:

a.     During the construction phase of the project, [Synovitz] requested and expected topographic field services from [Mo-Con] to determine a course of action for the on-going work. [Mo-Con] obtained and provided storm sewer invert elevations, but no top of manhole elevations.

b.     [Mott] and [Synovitz] never responded to an RFI that requested instructions on how to proceed with the balance of the project.

c.     [Mott] and [Synovitz] were informed by the City Manager to not respond to the RFI provided by [Mo-Con]. The information requested in the RFI was vital for the continuing action of [Mo-Con].

Alaniz concluded that these "acts, errors and/or omissions indicate that [Mott] and [Synovitz] failed to meet the applicable standard of care for engineering professionals."

On November 4, 2022, Hanson filed its motion to compel Mo-Con to respond to Hanson's requests for production of documents and interrogatories. On November 28, 2022, the trial court conducted a hearing regarding Hanson's motion to compel. During

7

the hearing, the trial court informed the parties that Mo-Con's counsel had apprised the court that "he wouldn't be participating in this hearing, and that he is resigning from the [Texas] Bar; and he would like . . . for the Court to give [Mo-Con] an opportunity to get new counsel, which, of course, I am." The trial court did not rule on Hanson's motion to compel.

On February 14, 2023, Hanson, Hernandez, and Synovitz filed a joint no-evidence motion for summary judgment. On the same day, the City filed its own no-evidence motion for summary judgment, which is the motion at issue in this appeal. Specifically, the City argued that Mo-Con failed to produce evidence showing the essential elements of its breach of contract claim, namely, the existence of a valid contract, any breaches of the contract, or damages. The City further argued that there was no evidence that the City's immunity was waived as to Mo-Con's other claims. Also on the same day, a notice was filed indicating that the trial court set the City's summary judgment motion for an in-person hearing on March 8, 2023.[4]

On March 6, 2023, Mott filed its motion for joinder of Hanson's, Hernandez's, and Synovitz's joint no-evidence motion for summary judgment. On March 9, 2023, a notice of hearing was filed indicating the trial court set all the summary judgment motions, including the City's, for a Zoom hearing on March 30, 2023.

On April 11, 2023, Mo-Con's new counsel, Juan Perales, filed a notice of appearance of counsel. On April 12, 2023, Mo-Con filed a motion for continuance of the summary judgment hearing. In the motion, Perales pleaded that he nor Mo-Con were

---

[4] The trial court's case summary indicates this hearing was cancelled.

8

provided "effective written notice" of the trial court's "rescheduled summary judgment hearing." Perales also stated that "Texas Rule of Civil Procedure 166a requires a party to serve notice of a summary judgment hearing on opposing counsel at least twenty-one days before the hearing date." The motion did not request any particular amount of time or a new hearing or submission date. On the next day, the City filed a response opposing Mo-Con's continuance motion.

On April 17, 2023, the trial court conducted a hearing on Mo-Con's continuance motion. At the hearing, Perales informed the trial court that he was retained the previous week and that his secretary had called Mo-Con's prior counsel, who indicated he was going to sign a motion to substitute counsel. Perales also informed the trial court that prior counsel had "resigned in lieu of disbarment." The City's counsel informed the trial court that it opposed Mo-Con's continuance request and reminded the trial court that it had conducted a hearing on March 30,[5] at which Moya, "Mo-Con's registered agent and director, appeared without counsel and asked for more time." According to the City's counsel, the trial court permitted Mo-Con "to retain counsel and file a response to the motions for summary judgment by April 13[], the date upon which this Court would rule by submission." The City further argued that the fact "that Mo-Con waited until April 11[] to retain counsel is not sufficient cause to grant Mo-Con's second continuance." The City's counsel also informed the trial court that it had served "all notices and filings" to Moya's email address since December 2022, including its no-evidence motion for summary judgment.

---

[5] The appellate record does not contain a transcript of this hearing.

The trial court then heard additional responses by Mott's counsel and Perales. The trial court informed Perales that he was Mo-Con's attorney whether its prior counsel filed "a motion to substitute counsel or not," and asked him what his request was "as far as time frame to address the [summary judgment] motions." Perales responded, "Your Honor, this is—well, because of all the parties that are involved, it's a little bit more complicated tha[n] I anticipated when I took the case, but I feel that I can . . . file a response within 10 days." The City's counsel responded that Mo-Con should be given less time. The trial court ruled that Mo-Con had until 5:00 p.m. on April 24, 2023, to provide a response to the no-evidence motions for summary judgment. The trial court further informed the parties that it would consider the motions for summary judgments by submission and that any reply to Mo-Con's response by the other parties had to be filed before 5:00 p.m. on April 27, 2023.

On April 25, 2023, Mo-Con filed a response to the City's summary judgment motion. In its response, Mo-Con attached a single exhibit, Alaniz's affidavit, and argued that said affidavit "proves the existence of a written contract that was breached by the City."

On April 26, 2023, the City filed a reply to Mo-Con's response. In its response, the City contended that Alaniz's affidavit was "merely a copy of the Certificate of Merit already filed by Mo-Con on July 25, 2022[,] in an attempt to comply with Texas Civil Practice & Remedies Code Section 150.002." The City further stated that "the only allegations made in [Alaniz's affidavit] are that co-[d]efendants Hanson[, ]Hernandez,[ ]Synovitz, and [Mott] made engineering errors or omissions and/or breached the applicable standard of care

10

for engineering professionals. [The affidavit] was not intended to, nor does it, create any evidence against the City."

On April 27, 2023, Mo-Con filed its "Notice of Nonsuit with Prejudice," by which it gave notice that it was nonsuiting with prejudice all of its claims and causes of action against Hanson, Hernandez, Synovitz, and Mott. The next day, the trial court signed its order granting the City's summary judgment motion, ordering that Mo-Con "take nothing" from the City, and dismissing all of Mo-Con's claims and causes of action against the City.

On May 1, 2023, Mo-Con filed a "third amended"[6] petition which only raised a breach of contract claim against the City. Mo-Con attached to its unverified petition a single-page "Notice of Award" document, dated August 15, 2018, and signed by Hernandez. The document indicated the City had accepted Mo-Con's bid and awarded Mo-Con a contract for the "East Main Street Drainage Project." It further indicated the "[c]ontract [p]rice of the awarded [c]ontract" was $468,713.71, and that the "[c]ontract [t]ime" was ninety calendar days. The document stated that Mo-Con was required to comply with certain conditions precedent within thirty days of the date of receipt of the notice. It informed Mo-Con that failure to comply with the conditions "within the time specified will entitle [the City] to consider [Mo-Con] in default, annul this Notice of Award, and declare [Mo-Con's] Bid security forfeited." The document further stated, "Within ten (10) days after you comply with the above conditions, [the City] will return to you one fully executed counterpart of the Agreement, together with any additional copies of the Contract Documents as indicated in Paragraph 2.02 of the General Conditions."

---

[6] The record does not contain a second amended petition filed by Mo-Con.

On May 8, 2023, the trial court signed an order granting Mo-Con's nonsuit, and ordering that Hanson, Hernandez, Synovitz, and Mott be released from all claims brought by Mo-Con.

On May 30, 2023, Mo-Con filed its motion for new trial and request for reconsideration with an attached affidavit by Pat Garza, Perales's paralegal. The motion stated, among other things, that Mo-Con was granted ten days to file a response to the City's no-evidence summary judgment motion "although [Mo-Con] was entitled to [twenty-one] day's notice of hearing." Mo-Con pleaded that "it was prevented from amending [its] petition prior to the [trial c]ourt's grant of the [City's] no-evidence summary judgment . . . due to [its] unsuccessful attempts to retrieve [the] case file from [its] former [counsel]." Mo-Con also pleaded that its former counsel "was reluctant to and failed to promptly return [Mo-Con's] case file with sufficient time to allow [Perales] to comply with the [trial court]'s abbreviated notice to file a response to the [City's] [m]otion for [n]o-[e]vidence [s]ummary [j]udgment." Garza stated in his affidavit that she contacted Mo-Con's former counsel on April 18, 2023, requesting the "Mo-Con file." According to Garza, Mo-Con's former counsel agreed to provide her the case file but did not do so until April 28, 2023. The affidavit contained attached screenshots of text messages between Garza and Mo-Con's former counsel.

On July 7, 2023, the trial court denied Mo-Con's motion for new trial. On April 4, 2024, the City and Hanson filed a joint, agreed motion to dismiss all claims asserted by Hanson against the City. On April 30, 2024, the trial court entered its order granting the agreed motion to dismiss, which dismissed Hanson's claim against the City with prejudice

12

and rendered the underlying proceedings final for purposes of appeal. This appeal followed.

## II.    CONTINUANCE

In its first issue, Mo-Con argues that the trial court abused its discretion when it failed to provide Mo-Con "sufficient time" to respond to the City's summary judgment motion. The City argues in response that Mo-Con failed to adequately brief this issue. We agree. The "[f]ailure to cite applicable authority or provide substantive analysis waives an issue on appeal." *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *see also* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Jackson v. Vaughn*, 546 S.W.3d 913, 922 (Tex. App.—Amarillo 2018, no pet.) (holding appellant had waived issue due to inadequate briefing). The Texas Supreme Court has recently reaffirmed its "general disapproval of summarily dismissing issues based on procedural defects and encouraged resolving cases on the merits instead." *Borusan Mannesmann Pipe US, Inc. v. Hunting Energy Servs., LLC*, 716 S.W.3d 572, 575 (Tex. 2025) (per curiam) (citing *Bertucci v. Watkins*, 709 S.W.3d 534, 542–43 (Tex. 2025)). However, the Court acknowledged that an issue can still be forfeited or waived on appeal and that an appellate court is "not obligated itself to perform, and is indeed forbidden from performing, the task of litigating the case on any party's behalf." *Id.* at 576.

In its brief, Mo-Con has asserted its continuance issue in two small paragraphs which do not include any citations to the record or applicable authority in support. Under these circumstances, we conclude Mo-Con has forfeited its complaint due to inadequate

13

briefing. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284; *Huey*, 200 S.W.3d at 854; *Jackson*, 546 S.W.3d at 922; *cf. Borusan*, 716 S.W.3d at 575 (holding that the appellant preserved its appellate issue by presenting roughly five pages of argument with ample record citations to documents, testimony, and the trial court's findings of facts and conclusions of law). Mo-Con's first issue is overruled.

## III.   NO-EVIDENCE SUMMARY JUDGMENT

In its second issue, Mo-Con argues the trial court abused its discretion when it granted the City's no-evidence motion for summary judgment on its breach of contract claim.[7]

### A.   Standard of Review and Applicable Law

We review a summary judgment order de novo. *See JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). "[A] party may obtain a no-evidence summary judgment when 'there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.'" *Id.* (quoting former TEX. R. CIV. P. 166a(i)).[8] "A properly filed no-evidence motion shifts the burden to the non[-]movant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders*, 622 S.W.3d at 864 (first citing former TEX. R. CIV. P 166a(i); and then citing *Mack Trucks, Inc. v. Tamez*, 206

---

[7] Mo-Con does not challenge the trial court's grant of the City's no-evidence motion for summary judgment with respect to Mo-Con's other claims.

[8] Texas Rule of Civil Procedure 166a, the rule governing motions for summary judgments, was recently amended with an effective date of March 1, 2026. The amended rule applies only to motions for summary judgment filed after the effective date. Said rule is inapplicable to the instant case because the City's no-evidence motion for summary judgment was filed prior to March 1, 2026.

14

S.W.3d 572, 582 (Tex. 2006)). However, the non-movant is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (quoting former TEX. R. CIV. P. 166a(i) cmt.—1997).

"[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact" as to each challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (first citing former TEX. R. CIV. P 166a(i); and then citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). "More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions." *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003)). "Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of a fact regarding a challenged element." *Id.* (citing *Forbes*, 124 S.W.3d at 172).

A no-evidence motion for summary judgment "must specifically state the elements as to which the movant contends there is no evidence." *Ramirez v. GEICO*, 548 S.W.3d 761, 767 (Tex. App.—El Paso 2018, pet. denied). "The underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.'" *Id.* at 771 (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)). "A no-evidence summary judgment motion 'must be specific in challenging the evidentiary support for an

15

element of a claim or defense,' and 'conclusory motions or general no-evidence challenges to an opponent's case' will be deemed insufficient to provide the requisite notice to the non-movant." *Id.* (quoting *Timpte*, 286 S.W.3d at 310).

Upon summary judgment review, we take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *See JLB Builders*, 622 S.W.3d at 864 (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). "In our review, we consider all the summary judgment evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences." *Pandozy v. Shamis*, 254 S.W.3d 596, 599 (Tex. App.—Texarkana 2008, pet. struck) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). To defeat a no-evidence summary judgment motion, "[b]oth direct and circumstantial evidence may be used to establish any material fact." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

When the trial court "does not specify the grounds it relied upon in making its determination, reviewing courts must affirm summary judgment if any of the grounds asserted are meritorious." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). However, "[s]ummary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (citing *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993)).

"The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the

16

contract by the defendant; and (4) damages sustained as a result of the breach." *AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 806 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "A breach of contract occurs when a party fails or refuses to do something it has promised to do." *Id.*

**B.    Analysis**

The City argued in its summary judgment motion that Mo-Con failed to produce evidence establishing the first, third, and fourth elements of its breach of contract claim. *See id*. On appeal, Mo-Con argues that it met its burden to prove all the essential elements of its breach of contract claim against the City. Specifically, Mo-Con directs us to the "Notice of Award" it attached to its "third amended" petition, Alaniz's affidavit, and the City's purported "judicial admission" in its summary judgment motion that "Mo-Con's suit was based on the existence of a valid contract that was 'never shown.'"

We first note that appellate courts only consider evidence that was before the trial court at the time it ruled on the particular summary judgment motions being challenged.[9] *See Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 932 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (declining to consider evidence that was not attached to summary judgment response); *Blankinship v. Brown*, 399 S.W.3d 303, 309 (Tex. App.—Dallas 2013, pet. denied) (holding "trial testimony" could not be considered because "this evidence was not before the trial court at the time it considered summary judgment");

---

[9] We note that the newly amended Rule 166a permits the trial court to consider "late-filed evidence if the court indicates its consideration in the record." *See* Tex. R. Civ. P. 166a(j)(6). However, as previously discussed, the amended rule is not applicable to the instant case. We also note that appellant does not argue that the amended rule applies to this case.

*Neely v. Comm'n for Law. Discipline*, 302 S.W.3d 331, 347 n.16 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing former TEX. R. CIV. P. 166a(d) and explaining that it cannot consider evidence that was not before the trial court); *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (declining to consider evidence attached to a motion for new trial that was not before the trial court when it granted summary judgment). The "Notice of Award" that Mo-Con points to was attached to its "third amended" petition that was filed the day after the trial court signed its order granting the City's no-evidence summary judgment. Because the "Notice of Award" was not before the trial court at the time it ruled on the City's summary judgment motion, we may not consider it.

Next, even assuming there was more than a scintilla of evidence before the trial court to raise a material fact question on the existence of a valid contract, we nevertheless conclude that there was no evidence raising a fact question concerning the breach and damage elements of Mo-Con's breach of contract claim. *See Chapman*, 118 S.W.3d at 751; *AKIB Constr.*, 582 S.W.3d at 806. The record contains no evidence of the terms of the alleged contract at issue or damages resulting from an alleged breach by the City. While Mo-Con points to Alaniz's affidavit as proof of the elements of its breach of contract claim, said affidavit primarily implicates the conduct of Hanson, Hernandez, Synovitz, and Mott, and concludes their conduct failed to meet the applicable standard of care for engineering professionals. Even assuming that Hanson, Hernandez, Synovitz, and Mott were agents of the City, the trial court could not have reasonably inferred from Alaniz's affidavit what terms of the alleged contract the City breached or what damages Mo-Con

18

suffered as a result. *See JLB Builders*, 622 S.W.3d at 864 (noting appellate courts indulge in every *reasonable* inference in the nonmovant's favor when reviewing an order granting summary judgment); *AKIB Constr.*, 582 S.W.3d at 806. Consequently, we conclude the trial court did not err in granting the City's no-evidence motion for summary judgment on Mo-Con's breach of contract claim. Mo-Con's second issue is overruled.

## IV. CONCLUSION

We affirm the judgment of the trial court.

CLARISSA SILVA
Justice

Delivered and filed on the
7th day of May, 2026.